UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD HARDRICK #606507,                          Case No.  2:20-cv-00239

                    Plaintiff,                     Hon.  Hala Y. Jarbou
                                                   U.S. District Judge
        v.

UNKNOWN NOLANI, et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment.  (ECF No. 17.)

This is a civil rights action brought by state prisoner Bernard Hardrick pursuant to 42 U.S.C. § 1983.  There are two Defendants in the case:  mailroom employee Nolan[1] and Prison Counselor (PC) Hetrick, both of whom are members of the staff at the Chippewa Correctional Facility (URF).  In his verified complaint Hardrick alleges that Defendants violated his First Amendment right to access reading material.  (ECF No.1, PageID.2-6.)  Hardrick says that a member of Hardrick's family mailed him a book entitled "The Laws of Human Nature." (*Id.*)  He says that Nolan rejected the book in July of 2020, and a couple of weeks later PC

---

[1]      Hardrick identified Nolan as "Nolani (URF, Mail Room Staff)" in his complaint. ECF No. 1.

Hetrick conducted a hearing on the rejection.  (*Id.*)  PC Hetrick determined that the book was a security threat and informed Hardrick that the book had been placed on the restricted publication list.  (*Id.*, PageID.3.)

Defendant Nolan has filed a motion for summary judgment.  (ECF No. 18.)  He identified a single grievance filed by Hardrick during the relevant time – **URF 20-08-2100-07A** – and asserts that this grievance did not name him.  Accordingly, he asks the Court to grant summary judgment in his favor.  Hardrick filed a response. (ECF No. 20.)   Hardrick says that he did not know Defendant Nolan's name when he first filed his grievance.  Hardrick named "mailroom staff" in his Step I grievance and first named Defendant Nolan in his Step III grievance.  In reply, Nolan also argues that Hardrick did not make any allegations against Nolan until Step III.

In the opinion of the undersigned, a genunine issue of fact remains regarding whether Hardrick exhausted his administrative grievance remedies against Defendant Nolan.  Accordingly, The undersigned respectfully recommends that the Court deny Defendant Nolan's motion for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

[2]     Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.*  When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019).  According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.   The Policy

Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id*. at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id*. at ¶ DD.  The respondent at Step II is designated by the policy. *Id*. at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id*. at ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id*.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id*. at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id*. at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for

filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified if an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at \*3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure.  As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the

7

PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV. Analysis

Hardrick filed one relevant grievance: **URF-20-08-2100-07A**. (ECF No. 18-3, PageID.103-107.)   Defendant Nolan argues that the claim against him is not exhausted because Hardrick failed to name him in his Step I grievance.  Hardrick says that he did not know Nolan's name at that time he filed his grievance and referred to Nolan as "mailroom staff."  Hardrick asserts that Nolan was interviewed by the Step I grievance responder which indicates that the MDOC was aware of Nolan's involvement in the subject matter of the grievance.  In his Step I grievance Hardrick wrote the following:

---

[3]  In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."   *Id*. at 596.  For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On 7-29-20, mailroom staff sent me a notice of mail rejection for a book that my family ordered titled "The Laws of Human Nature" alleging that the book was considered a threat to security due to a Chapter titled "Observation Skills". I requested a hearing on the rejection which was held on 8-4-20 by PC Hetrick. Ms. Hetrick informed grievant that the book was not on the "restricted list," but was considered a threat to security because it allegedly teaches "mind control." The Grievant respectfully objects to MS Hetrick's opinion of the book being a "threat" to security. Grievant contends that the book poses no threat to security and there is no sincere penological interest in rejecting the book. The book was not on any restricted list in the institution and mailroom staff's decision to deny grievant the reading material with no penological interest violates his First Amendment Right to access reading material and receive mail.
I request that my Book be furnished to me.

_Grievant's Signature_

(ECF No. 18-3, PageID.106.)    Hardrick indicated that "mailroom staff sent me a notice of mail rejection" and "mailroom staff's decision to deny" reading material violated his First Amendment rights.  *Id.*  Hardrick also points to the Step I Grievance Response Supplemental Form as evidence that he exhausted his claim against Defendant Nolan because that form states in part that "[i]nterviewing mailroom staff and PC Hetrick they conducted themselves professionally and followed all appropriate Policies and Procedures."  (*Id.*, PageID.107.)

In his Step II appeal of the Step I response, Hardrick wrote the following:

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Bernard Hardrick | 606507 | URF | N-256 | 7-29-20 | 8-18-20 |

STEP II — Reason for Appeal Grievant incorporates issues raised herein this Step II appeal from his Step 1 grievance and further states that during the rejection hearing held by PC Hetrick, grievant noticed that Hetrick did not have the Book in her possession as she concluded that book was "mind control." The grievant asked PC Hetrick had she actually inspected or read any part of the book before she concluded that it was a threat to security, Hetrick answered "No." PC Hetrick failed to conduct an adequate inspection of the book before upholding the rejection that violated grievant's First Amended Right to access reading material and mail free from intrusion of the government without cause,

(Id., PageID 104.)  Thus, Hardrick did not mention the mailroom staff in his Step II appeal

The first time Hardrick named Defendant Nolan was in his Step III grievance appeal.  Hardrick identified Nolan as the person who destroyed the book after Hetrick made the decision that the book posed a security threat in the prison.  Hardrick says the book was destroyed before the proper hearing and appeal were complete. Hardrick wrote the following:

STEP III — Reason for Appeal Grievant incorporates issues raised in step 1 and 2 herein this step 3 and further states that staff has violated his right to Due Process by having the book at issue destroyed before this appeal process was finalized. Staff are not allowed to dispose of any property until a proper hearing is conducted or the appeal of the hearing decision is finalized per Policy. PC Hetrick informed me that she and mailroom staff Nolan destroyed the book Grievant's First and Fourteenth Amendment Rights have been violated during the course of this matter

(Id., PageID.104.)

The Sixth Circuit has explained that "[a] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief." Mattox, 851 F.3d at 590-91.  The MDOC requires a prisoner to identify the individuals being grieved, Reed-Bey, 603 F.3d at 324-25, and the subject matter of the grievance.  Mattox, 851 F.3d at 596.  An inmate must name each defendant in a properly exhausted grievance before he files a federal complaint.  Kean v. Hughes, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a claim against any other employee").  Where a prisoner fails to name a defendant in his Step I grievance or mentions that an individual is involved

10

for the first time during the Step III appeal of the denial of a grievance, the claim against that individual is not properly exhausted. *Id.* at *6.

Hardrick's identification of Nolan's name for the first time *at Step III* is not enough to exhaust his claim against Defendant Nolan. Here, the issue is whether naming "mailroom staff" was enough to place the MDOC on notice that Defendant Nolan was the person that Hardrick intended to name in his Step I grievance, but for the fact that Nolan's name was unknown to Hardrick at the time he filed his Step I grievance.

The purpose of naming the individual grieved is to provide notice so that the prison can adequately address the issues being grieved. That purpose is "satisfied where the grievant identifies the prison official by title, but not by name." *Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *8 (E.D. Mich. July 31, 2018), *report and recommendation adopted,* No. 17-CV-13217, 2018 WL 4501480 (E.D. Mich. Sept. 20, 2018). Exhaustion is satisfied where the plaintiff identifies the defendant in his grievance by position or title and not by name. *Harrington v. Smolinski*, No. 1:05-CV-688, 2006 WL 549383, at *3 (W.D. Mich. Mar. 6, 2006).

In the opinion of the undersigned, Hardrick's failure to name Nolan at Step I is not fatal to his claim. In reviewing Hardrick's Step I grievance, his Step II and III appeals, and the associated responses, the undersigned concludes that a genuine issue of material fact remains regarding whether he exhausted his claim against mailroom employee Nolan.

In addition, the undersigned is aware that this Court has found that a prisoner who raises new claims at Steps II and III does not exhaust the new claims simply because the MDOC denied the grievance on the merits of the claim initially raised at Step I. *See Mays v. Pynnonen*, No. 2:17-CV-00167, 2021 WL 469041, at *8 (W.D. Mich. Jan. 5, 2021), *report and recommendation adopted*, No. 2:17-CV-167, 2021 WL 266620 (W.D. Mich. Jan. 27, 2021) (noting that "[t]he MDOC would essentially need a scorecard to track and address his evolving claims. A review of the Step II and III response indicates that the MDOC limited itself to an assessment of the core of the claim Mays raised at Step I (prior to the alleged retaliation by Nyquist) and did not address the claims he brought up at Step II."). In that case, Mays's claims changed significantly as he progressed through the grievance process and the MDOC limited itself to addressing the core claims raised at Step I. Here, the situation is different. Hardrick's claim is simple: he complains that his PC rejected a book without authority. Although Hardrick's initial claim was explicitly against Hetrick, his claim implicated the actions of the mail room employee. Furthermore, it is clear that Hardrick is not raising entirely new claims later in the grievance process, which was part of the problem in the *Mays* case. *See id*. (noting that Mays "wrote pages of semi-legible script at each step of the process and stated multiple complaints against multiple people on multiple days").

## V.  Recommendation

It is respectfully recommended that the Court deny Defendant Nolan's motion

for summary judgment.

Dated:   September 10, 2021                   /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).