UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD HARDRICK #606507,

    Plaintiff,

v.

UNKNOWN NOLANI, et al.,

    Defendants.
_____/

Case No.   2:20-cv-00239

Hon. Jane M. Beckering
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I. Introduction**

This Report and Recommendation (R&R) addresses the summary judgment motions filed by Defendants. (ECF No. 31.)

The Plaintiff in this case – state prisoner Bernard Hardrick – filed this civil rights action pursuant to 42 U.S.C. § 1983. There are two Defendants in the case: mailroom employee Nolan[1] and Prison Counselor (PC) Hetrick, both of whom are members of the staff at the Chippewa Correctional Facility (URF). In his verified complaint, Hardrick alleges that Defendants violated his First Amendment right to access reading material. (ECF No.1, PageID.2-6.) Hardrick says that a member of Hardrick's family mailed him a book entitled *The Laws of Human Nature*. (*Id.*) He says that Nolan rejected the book in July of 2020, and a couple of weeks later PC Hetrick conducted a hearing on the rejection. (*Id.*) PC Hetrick determined that the

---

[1] Hardrick identified Nolan as "Nolani (URF, Mail Room Staff)" in his complaint. (ECF No. 1.)

book was a security threat and informed Hardrick that the book had been placed on the restricted publication list. (*Id.*, PageID.3.)

The book *The Laws of Human Nature* was placed on the MDOC Restricted Publication List *before* PC Hetrick held the hearing. Once on the list, Defendants no longer had discretion under MDOC policy to allow a prisoner to possess the book. Defendants have set forth legitimate security reasons to restrict the book inside the prison. Defendants have established that no genuine issue of material fact exists on Hardrick's claim that his First Amendment rights were violated when he was not allowed to possess *The Laws of Human Nature* in July or August of 2020.

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

**II. Factual Allegations**

Around July of 2020, Hardrick's family member sent him a book as a gift. (ECF No. 1, PageID.2.) The book was entitled *The Laws of Human Nature*. (*Id.*) Defendant Nolan sent Hardrick a Notice of Mail Rejection because the book posed a threat to security, good order, or discipline within the prison. (*Id.*)

Hardrick requested a hearing and, on August 5, 2020, PC Hetrick called Hardrick to her office and stated: "I don't understand why you would request a hearing on the book when it was already rejected by the mail room knowing that 9 times out of 10, I'm going to uphold the rejection." (*Id.*, PageID.3.) Hardrick informed PC Hetrick that he had a right to a hearing and that the book came from an approved vendor. (*Id.*) In turn, PC Hetrick told Hardrick that she has rejected

2

this book when other prisoners had it sent to the prison in past and, as of August 3, 2020, the book was added to the restricted publication list. (*Id.*) Hardrick says that PC Hetrick admitted that she had not inspected or read any part of the book. (*Id.*)

When further pressed, PC Hetrick explained that the book was about mind control and how to manipulate people and that she is surprised that the book was written. (*Id.*) PC Hetrick then asked Hardrick if he wanted the book mailed out at his expense or destroyed, and Hardrick responded that she (Hetrick) needed to keep the book until his appeal of her rejection was finished. (*Id.*) Hardrick says that PC Hetrick informed him that the book would be destroyed if he chose not to mail it out at that time. (*Id.*)

Hardrick states that PC Hetrick did not indicate in the Administrative Hearing Report how the book was a threat to the security of the prison. (*Id.*, PageID.4.) The Report stated in part:



(ECF No. 1-2, PageID.11.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

4

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV.  First Amendment

Hardrick alleges that Defendants violated his First Amendment rights by refusing him access to the book *The Laws of Human Nature*. Defendant Nolan rejected the book because the book "contained passages regarding observation skills and how to use such skills to gain control over another person." (ECF No. 32-2, PageID.178 (Affidavit of Nolan).)

On August 3, 2020, the book *The Laws of Human Nature* was added to the MDOC restricted list by MDOC officials at the Correctional Facilities Administration in Lansing, Michigan. (*Id.*; and ECF No. 32-10, PageID.242 (Affidavit of Hetrick).) Defendants were not involved in placing the book on the MDOC Restricted Publication List. (*Id.*) The MDOC Restricted Publication List indicates that the book "[p]rovides instruction in the commission of criminal activity, including identifying methods used to manipulate and persuade other people to do things they would not ordinarily do." (ECF No. 32-5, PageID.207.) Once a book is placed on the MDOC Restricted Publication List, it must be rejected at every MDOC facility

5

without the need for a hearing. MDOC Policy Directive 05.03.118 (DDD). (ECF No. 32-3, PageID.191.) After August 3, 2020, the Defendants had no discretion but to reject the book. (*Id.*)

Prison officials may impinge on a prisoner's constitutional right to the exercise of the First Amendment if their actions are "reasonably related to legitimate penological interests." *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following issues:

> 1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. are there alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational").

6

If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id*. Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id*. "However, 'if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.'" *Id*. at 484 (quoting *Turner*, 482 U.S. at 91.)

First, the Defendants have established a legitimate government interest in preventing inmates from using manipulative and intimidating techniques in the prison. *See Dial v Wiley*, 2007 WL 2728349, *12-13 (D. Colo. Sept. 18, 2007) (restricting a book that contained information about manipulating and controlling people); *Lampley v. Buss*, 2012 WL 3862538 *9 (N.D. Ind., Sept. 5, 2012) (restricting a publication that instructed how to victimize others and manipulate them against their will). The book *The Laws of Human Nature* instructs how to influence or seduce people, and to deceive people. (ECF No. 32-4, PageID.202-203.) It is

7

undisputed that Defendants have set forth a legitimate penological reason for prohibiting the book inside the prison.

As to the remaining *Turner* factors, Hardrick has the right to receive other publications that are not restricted by the MDOC. Additionally, there exists no valid reasons for prisoners to possess the book *The Laws of Human Nature* and the teachings in the book could have a negative impact on guards by providing prisoners with techniques that may be used to manipulate and control others. Finally, there exists no reasonable alternatives that could accommodate Hardrick's desire to possess the book *The Laws of Human Nature*.[2]

In the opinion of the undersigned, the *Turner* factors weigh in favor of concluding that decision to restrict Hardrick's access to the book *The Laws of Human Nature* did not violate his First Amendment rights.

## V. Qualified Immunity

Alternatively, Defendants move for dismissal based upon qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar

---

2   Hardrick states that other prisoners have been able to receive the book even after it was placed on the MDOC Restricted Publication List. Hardrick states that he was able to get the book from another prisoner who paroled out of the prison. (ECF No. 39, PageID.281) Assuming that this true, the fact that other prisoners had prohibited items inside the prison walls is not a basis for concluding that Hardrick should also be allowed to possess contraband items. The fact that Hardrick is now claiming that he possesses this book "legally", despite it being on the MDOC Restricted Publication List, is not a basis for finding that Defendants should have allowed him to have the book in August of 2020. Hardrick states that MDOC officials know that he has the book, but they have not confiscated it. (ECF No. 39, PageID.283.)

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to

be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ––––, ––––, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously

> resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Because the undersigned finds that there are no genuine issues of material fact, and that Defendants did not violate Hardrick's First Amendment rights by following the MDOC Restricted Publication List, which prohibits prisoners from possessing the book *The Laws of Human Nature*, Defendants are entitled to qualified immunity from liability.

Finally, Hardrick has failed to set forth clearly established law that shows that Defendants' actions could have violated his First Amendment rights by denying him access to a publication that is listed on the department of corrections restricted publication list.

### VI. Recommendation

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    December 28, 2022              /s/ *Maarten Vermaat*

                                         MAARTEN VERMAAT
                                         U.S. MAGISTRATE JUDGE